**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SAPPHIRE CROSSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>QUOTIENT TECHNOLOGY INC.,<br><br>Defendant. | C.A. No. 1:18-cv-01717-MN<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT QUOTIENT TECHNOLOGY INC.'S OPENING BRIEF IN SUPPORT
OF ITS RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (# 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com

**ATTORNEYS FOR DEFENDANT
QUOTIENT TECHNOLOGY INC.**

Dated: December 26, 2018

# TABLE OF CONTENTS

**Page(s)**

I. STAGE AND NATURE OF PROCEEDINGS ...........................................................1

II. SUMMARY OF THE ARGUMENT ........................................................................1

III. STATEMENT OF THE FACTS ................................................................................1

IV. LEGAL STANDARDS ..............................................................................................4

    A. Legal Standard for Dismissal Pursuant to Rule 12(b)(6). ..............................4

    B. Patentability is a Threshold Legal Issue. .......................................................5

    C. The Law of 35 U.S.C. § 101. ..........................................................................5

V. ARGUMENT ...............................................................................................................6

    A. *Alice* Step 1: The '633 Patent is directed to the abstract idea of data recognition and transfer ...........................................................................7

    B. *Alice* Step 2: The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter. ..................12

VI. CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
　134 S. Ct. 2347 (2014) .................................................................................................... *passim*

*Ancora Technologies, Inc. v. HTC America, Inc.*,
　--- F.3d ---, 2018 WL 6005021 (Fed. Cir. Nov. 16, 2018) ......................................................11

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
　838 F.3d 1253 (Fed. Cir. 2016) ..............................................................................................12

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................................ 4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
　687 F.3d 1266 (Fed. Cir. 2012) .........................................................................................5, 14

*Bilski v. Kappos*,
　561 U.S. 593 (2010) ........................................................................................................5, 6, 7

*BSG Tech LLC v. Buyseasons, Inc.*,
　899 F.3d 1281 (Fed. Cir. 2018) ................................................................................................8

*buySAFE, Inc. v. Google, Inc.*,
　765 F.3d 1350 (Fed. Cir. 2014) .........................................................................................11, 14

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
　776 F.3d 1343 (Fed. Cir. 2014) ..........................................................................................7, 14

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
　880 F.3d 1356 (Fed. Cir. 2018) ..............................................................................................10

*Cuvillier v. Sullivan*,
　503 F.3d 397 (5th Cir. 2007) ................................................................................................... 4

*CyberSource Corp. v. Retail Decisions, Inc.*,
　654 F.3d 1366 (Fed. Cir. 2011) ................................................................................................6

*Data Engine Techs. LLC v. Google LLC*,
　906 F.3d 999 (Fed. Cir. 2018) ................................................................................................10

*Diamond v. Chakrabarty*,
　447 U.S. 303 (1980) ................................................................................................................ 5

*Diamond v. Diehr*,
    450 U.S. 175 (1981) .................................................................................................................6

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ............................................................................... 10, 11, 14

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ...............................................................................................8

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ..........................................................................................7, 8

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ...............................................................................................6

*Gibbs v. Coupe*,
    No. CV 14-790-SLR, 2015 WL 6870033 (D. Del. Nov. 6, 2015) ...........................................4

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) .......................................................................................13, 14

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ..........................................................................................9, 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ........................................................................................................6, 12

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ...............................................................................................8

*Parker v. Flook*,
    437 U.S. 584 (1978) ............................................................................................................6, 11

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ...........................7

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ..................................................................................... *passim*

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ...............................................................................................7

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) .................................................................................................9

*In re TLI Commc'ns LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016) ...............................................................................................13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)..................................................................................................8

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..................................................5, 10, 12

*Victaulic Co. v. Tieman*,
   499 F.3d 227 (3rd Cir. 2007) ....................................................................................................4

**Statutes**

35 U.S.C. § 101................................................................................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................................1, 4, 6

### I.      STAGE AND NATURE OF PROCEEDINGS

On October 31, 2018, Sapphire Crossing LLC ("Plaintiff" or "Sapphire") filed this lawsuit accusing Quotient Technology Inc. ("Quotient") of infringing U.S. Patent No. 6,891,633 (the "'633 Patent"). Sapphire accuses Quotient of infringing one or more claims of the '633 Patent [1] by Quotient's alleged "making, using […], marketing, and providing" a coupon scanning application available for download. Compl. ¶¶ 21, 13, 14, 19.

### II.     SUMMARY OF THE ARGUMENT

The '633 Patent does not embrace patent-eligible subject matter. The claims of the patent are directed to the abstract idea of data capture, upload, and transfer, and none of the claims recites any specific non-conventional hardware or software. In *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017), the Federal Circuit held claims directed to encoding and decoding images to aid in transmission—similar to the claims at issue here—invalid under both *Alice* steps. The claims of the '633 Patent cannot be meaningfully distinguished from the *RecogniCorp* claims and are thus invalid for the same reasons.

Resolving these issues does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating invalid patents, Quotient thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

### III.    STATEMENT OF THE FACTS

The '633 Patent is entitled "Image Transfer System" and is directed to "an image transfer device for reading and transferring an image from a first medium, and a computer." '633 Patent at Abstract. The '633 Patent sought to enhance copying machine functionality through an "enriched"

---

[1] In its Complaint, Sapphire asserts that Quotient "has and continues to directly infringe at least Claim 19 of the '633 Patent" (Dkt. No. 1 ("Compl.") ¶ 23).

software and user interface by connecting it to a personal computer ("PC") containing additional features. *Id.* at 1:17–26. The PC can utilize its generic memory and processing power that the copier lacks to purportedly perform enriched functions (e.g., collation) and send instructions back to the copier for output. *Id.* at 1:25–32.

One embodiment of the invention involves coupling a "transfer apparatus" with a reader capable of performing scanning functionality and a controller to connect to a computer. *See id.* at 1:56–65. A method describes "enhancing" the transfer device by expanding its operating features similar to the copier in the previous example. *Id.* at 2:16–33. The transfer device can be a standalone device such as a copier or fax machine, but when connected to a computer, its stable of features is allegedly expanded. *Id.* at 3:55–67. The details of these enrichments or enhancements, however, are missing from the specification and the claims.

Sapphire has explicitly asserted claims 19 and 20 of the '633 Patent, which are the only claims of the patent that survived an *Inter Partes* Review. Compl. ¶ 21; *see also Unified Patents Inc. v. Ruby Sands LLC*, IPR2016-00723, Paper No. 18 at 2 (PTAB Jan. 6, 2017). Claim 19, set forth below, is representative of the remaining claims of the patent:

19. A method for transferring information from a first medium, the method comprising the steps of:

providing an image transfer device having a scanner for reading an image on the first medium;

reading the image on the first medium with the scanner;

automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device;

with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner; and

transferring the merged image by the transfer device to a second medium.

*Id.* at cl. 19. This claim can be broken down into five main steps: (1) <u>providing</u> an image transfer device with a scanner; (2) <u>reading</u> an image with the scanner; (3) <u>displaying a menu for manipulation of the image on the image transfer device</u>; (4) <u>automatically merging electronic data</u> with the image read by the scanner; and; (5) <u>transferring</u> the merged image to another medium. Put simply, these steps are directed to scanning, uploading, and transferring an image from one medium to another.

The applicants made clear through the specification that the components and processes for carrying out the claimed method were conventional. For example, the claimed "image transfer device" can be virtually any device containing a reader, CPU, memory, display, and user interface. *See id.* at 3:14–21 ("The image transfer device 12 generally comprises a reader 18, a central processing unit (CPU) 20, a memory 22, a display 24 and a user interface (UI) 26."); 3:53–54 ("Thus, the image transfer device may include a computer printer, a copier, a facsimile or an optical Scanner capability."). And once an image is scanned, the "electronic data" (i.e., the information obtained from the image and the image itself) can then be "transferred" to a "second medium." *See id.* at cl. 19.

The "image transfer device" described in Claim 19 may be "only a copier and/or only a facsimile machine." *See id.*; *see also id.* at 3:59-63. Similarly, the "processor" for "merging the electronic data with the image" is nothing more than standard computer hardware. *See id.* at 3:42–43 ("The computer 14 generally includes a processor 32 and a memory 34."); *see also id.* at 12:19–25 ("the computer 14 of the image transfer system 10 has a processor 32B which is programmed to have a 'Plug and Play' polling capability. 'Plug and Play' polling allows the computer processor 32B to Sense, by means of a polling Signal, when the computer 14 is connected to the image transfer device 12 of the image transfer System."). Also, the "first medium" and "second medium"

3

may be just a "printed image" on a "sheet medium." *See id.* at cl. 19; *see also id.* at 3:22–23 ("The reader 18 is adapted to read a printed image on medium 100."); *id.* at 4:4–6 ("In the preferred embodiment, the device 12 has an input area 40 in which the user places the sheet medium 100 for reading by the reader 18."); *id.* at cl. 10 ("An electronic assembly in accordance with claim 1, wherein the image transfer device is adapted to transfer the image to at least one of the computer connected to the image transfer device, another computer located at first remote site, or a printing device for printing the image on a Second medium at a first remote site."). As such, the '633 Patent's image transfer device, scanner, processor, and media are all conventional.

## IV. LEGAL STANDARDS

### A. Legal Standard for Dismissal Pursuant to Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV 14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### B. Patentability is a Threshold Legal Issue.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### C. The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice

amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

**V.     ARGUMENT**

The Court should dismiss Sapphire's Complaint pursuant to Rule 12(b)(6) because the '633 Patent's claims, which are directed to capturing, uploading, and transferring data, cannot be meaningfully distinguished from those held patent-ineligible in *RecogniCorp*.

The claims of the '633 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of data recognition and transfer. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because

Sapphire has failed to state a claim upon which relief may be granted, Quotient respectfully requests that the Court grant its motion and dismiss this case with prejudice.

      A.    *Alice* **Step 1: The '633 Patent is directed to the abstract idea of data recognition and transfer.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '633 Patent are directed to an abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of data recognition and transfer. *See Alice*, 134 S. Ct. at 2356-59; *Bilski*, 561 U.S. at 611.

Claim 19 of the '633 Patent is representative of the claims.[2] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). The abstract idea inquiry begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a

---

[2] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); *see BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018).

Accordingly, at step one, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery."). Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

In *Recognicorp*, the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of "encoding and decoding image data." *Id.* at 1324. The claim at issue in *Recognicorp* recited:

> A method for creating a composite image, comprising:
>
> > displaying facial feature images on a first area of a first display via a first device associated with the first display, wherein the facial feature images are associated with facial feature element codes;
> >
> > selecting a facial feature image from the first area of the first display via a user interface associated with the first device,
> >
> > wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived

8

>    by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and
>
>    reproducing the composite image on a second display based on the composite facial image code.

*Id.* The Federal Circuit described the claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* at 1326. The Federal Circuit found that this method reflected "standard encoding and decoding." *Id.*

Similarly, by only claiming the desired result—capture, upload, and transfer of an image—without describing any specific roadmap for doing so, Claim 19 of the '633 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910–11 (Fed. Cir. 2017). All Claim 19 of the '633 Patent explains is a way to use a generic piece of hardware like a copier of fax machine, in conjunction with a similarly generic computer to capture, upload, and transfer images and associated data:

| Claim Language | Claimed Idea |
| --- | --- |
| A method for transferring information from a first medium, the method comprising the steps of: | |
| providing an image transfer device having a scanner for reading an image on the first medium; | deploying a scanner for reading data |
| reading the image on the first medium with the scanner; | capturing data |
| automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device; | uploading data |
| with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner; and | merging data |

| Claim Language | Claimed Idea |
|---|---|
| transferring the merged image by the transfer device to a second medium. | transferring data |

At a high level, this claim describes the most generic functional steps of a standard computer (i.e., capturing and sending data). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the steps with conventional components like an "image transfer device having a scanner," a "remote transfer device," a "display" device, and generic "computers" does not make it any less abstract.

Claim 19 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a *specific* improvement in the capabilities of computing devices") (emphasis added); *RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a *specific* means or method for improving technology") (emphasis added). Claim 19 does not require a new or unconventional machine or process for capturing, uploading, or transferring images—it requires only that well-known devices be connected to achieve an end-result of image transfer.

"Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 19 does not describe how the desired result—transfer of a captured and uploaded image—is achieved. It notes only a few simple criteria to achieve the end-result (a copier or fax-machine connected to a computer). The mechanism to implement the idea, however, is impermissibly unbounded in scope.

10

Claim 19 thus differs from the claims that recite specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit recently addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 2018 WL 6005021 (Fed. Cir. Nov. 16, 2018). In that case, the Federal Circuit held the claims eligible and stated, "[i]mproving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**." *Id.* at *4 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.*

The same is not true of Claim 19 of the '633 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality or image-transfer technology much less an unexpected way of effectuating such an improvement. Therefore, Claim 19 does not embrace patent-eligible subject matter.

"Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice*, its holding in *Parker,* 437 U.S. 584 stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online transactions was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted).

Claim 19 of the '633 Patent is abstract because it simply captures an image, uploads it, and transfers it to another medium.

Dependent Claim 20 recites limitations for electronic data uploaded from the computer to the image transfer device stays with the image transfer device after the computer is disconnected ('633 Patent at cl. 20). That Claim 20 describes how the uploaded data stays with the image transfer device after it is disconnected does not alter this analysis. *Mayo*, 132 S. Ct. at 1292 ("[S]imply appending conventional steps, specified at a high level of generality, to […] abstract ideas cannot make [them] patentable"). As such, adding the insignificant, post-solution idea that the uploaded data should not be deleted with disconnection of the device does nothing to change the ineligibility of the claims, especially because claim does not describe ***how*** this solution is achieved. *See, e.g.*, *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("Even if all the details contained in the specification were imported into the [ ] claims, the result would still not be a concrete implementation of the abstract idea. In fact, the specification underscores the breadth and abstract nature of the idea embodied in the claims."). Indeed, the claims in *Content Extraction* were directed to data recognition and *storage*, and are not meaningfully distinguished from the storage element of Claim 20. Therefore, the '633 Patent is directed to the abstract idea of data recognition and transfer.

> B. *Alice* **Step 2: The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter.**

Because the '633 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the '633 Patent "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, the '633

12

Patent is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Each of the steps recited in the '633 Patent is described only at a high level of generality as "transferring information from a first medium," "providing an image transfer device having a scanner for reading an image" (e.g., a barcode), "uploading electronic data…to the transfer device from a computer connected to the transfer device," "merging the electronic data with the image read by the scanner," and "transferring the merged image by the transfer device to a second medium." To accomplish these steps, the '633 Patent recites the use of an "image transfer device having a scanner," "an image transfer menu" (part of the "image transfer device), and "a computer connected to the transfer device." But the claimed "image transfer device" can be virtually any device capable of taking a photograph. *See* '633 Patent at 3:53-54.

The independent claims of the '633 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using a known process (i.e., using a computer's processing power in conjunction with a copier or fax-machine) and implementing it based on computer resources. As explained above, the abstract functional descriptions in the independent claims of the '633 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in the '633 Patent's claims "contains an

'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citing omitted).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the independent claims of the '633 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d 1276–77. The independent claims require only a "computer processor and memory" and an image transfer device such as a copier or fax-machine. Consequently, the independent claims recite only generic components—a processor and a memory—along with generic hardware with scanning functionality. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. Thus, there is no limitation in the independent claims that could be considered an inventive concept under step two of the *Alice* test.

The purported point of novelty of the '633 Patent is "enriching personal and desktop copier feature sets by utilizing the processing power and memory capacity of a connected personal computer." '633 Patent at 1:22-25. The patent expressly states that it does not utilize any particular non-conventional **mechanism** for achieving the **result**. *See Internet Patents*, 790 F.3d at 1348. Because each of the claims of the '633 Patent is altogether devoid of any "inventive concept," they are all patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

14

**VI.     CONCLUSION**

For the foregoing reasons, Quotient respectfully requests that the Court dismiss Sapphire's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Quotient requests dismissal with prejudice.

Dated: December 26, 2018                              Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Jeremy D. Anderson*
Jeremy D. Anderson (No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com

**COUNSEL FOR DEFENDANT
QUOTIENT TECHNOLOGY INC.**