# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Sapphire Crossing LLC**, | |
| Plaintiff, | C.A. No. 1:18-cv-01717-MN-CJB |
| v. | **(Lead)** |
| **Quotient Technology Inc.,** | |
| Defendant. | |
| **Sapphire Crossing LLC**, | |
| Plaintiff, | Case No 1:18-cv-02075-MN-CJB |
| v. | (Consolidated) |
| **WEX Health, Inc.**, | |
| Defendant. | |

### SAPPHIRE CROSSING'S OPPOSITION TO WEX HEALTH'S MOTION TO DISMISS

Dated: April 11, 2019

*Of Counsel:*

Isaac Rabicoff
Kenneth Matuszewski
RABICOFF LAW LLC
73 W Monroe St
Chicago, IL 60603
773-669-4590
isaac@rabilaw.com
kenneth@rabilaw.com

**DEVLIN LAW FIRM LLC**
Timothy Devlin (No. 4241)
1306 North Broom Street, Suite 1
Wilmington, DE 19806
Telephone: (302) 449-9010
Email: tdevlin@devlinlawfirm.com

*Attorneys for Plaintiff Sapphire Crossing LLC*

TABLE OF CONTENTS

I. STAGE AND NATURE OF THE PROCEEDINGS ................................................................ 1

II. SUMMARY OF THE ARGUMENT................................................................................... 1

III. LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS ..................................................... 1

IV. STATEMENT OF FACTS ............................................................................................... 2

A. Background. .............................................................................................................. 2

B. The '633 patent claims specific techniques to solve problems in prior art image
transfer systems. ....................................................................................................... 2

C. The specification demonstrates how inventive features are implemented,
including how the customized menu is embedded into the scanned image itself
(*merging element*). .................................................................................................. 4

D. The PTAB confirmed the validity of claims 19 and 20, determining that no prior
art disclosed the *merging element*. ........................................................................ 6

V. SAPPHIRE'S CLAIMS PASS BOTH PRONGS OF *ALICE*, MAKING THEM PATENT ELIGIBLE
UNDER SECTION 101 ................................................................................................. 6

A. Legal standard. ......................................................................................................... 6

B. Step One: Sapphire's claims are patent-eligible subject matter............................... 8

1. WEX Health's reading contorts the elements of claim 19, calling them abstract
only by describing them at a high level of abstraction. .......................................... 8

2. Claim 19 describes a specific improvement to scanning device interfacing and
functionality by embedding a customized menu into the scanned image itself.... 10

C. *Alice* Step Two: Sapphire's claims recite an inventive concept. ........................... 11

1. The claims capture the inventive feature of embedding a customized "image
transfer menu" from a computer into scanned image data from the scanning
device. ................................................................................................................... 11

2. *Berkheimer* prohibits dismissal under Section 101 here, given the factual dispute
over the unconventionality of embedding a customized "image transfer menu"
from a computer into scanned image data from the scanning device. ................... 13

VI. MANY TERMS IN THE ASSERTED CLAIMS REQUIRE CLAIM CONSTRUCTION TO
RESOLVE THE § 101 ISSUES: WEX HEALTH'S DEMAND FOR DISMISSAL NOW IS
PREMATURE. ............................................................................................................. 15

VII. CONCLUSION............................................................................................................. 15

TABLE OF AUTHORITIES

**Federal Cases**

*Alice Corp. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ...................................................................... *passim*

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................1

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) .........................................................13, 15

*Bustos v. Martini Club, Inc.,*
    599 F.3d 458 (5th Cir. 2010) .....................................................................1

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014) ...............................................................12

*Diamond v. Diehr,*
    450 U.S. 175 (1981) ...................................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ............................................................9, 11

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ............................................................9, 12

*In re TLI Commc'ns LLC Patent Litigation,*
    823 F.3d 607 (Fed. Cir. 2016) .................................................................13

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) ...............................................................10

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.,*
    132 S. Ct. 1289 (2012) ...............................................................................7

*Microsoft Corp. v. i4i Ltd. Partnership,*
    131 S. Ct. 2238 (2011) ...............................................................................8

*RecogniCorp LLC v. Nintendo Co., Ltd.,*
    855 F.3d 1322 (Fed. Cir. 2017) ............................................................10, 11

*Ultramercial, Inc. v. Hulu,*
    772 F.3d 709 (Fed. Cir. 2014) ...................................................................7

*Umbanet, Inc. v. Epsilon Data Mgmt., LLC,*
    Case No. 2:16-cv-682-JRG (E.D. Tex. Apr. 18, 2017) .............................2

**PTAB Authority**

*Unified Patents Inc. v. Ruby Sands LLC*,
    IPR2016-00723 (P.T.A.B. Jan. 6, 2017) .............................................................6, 14

**Federal Statutes**

35 U.S.C. § 101 ....................................................................................................................7

## I. STAGE AND NATURE OF THE PROCEEDINGS

Sapphire Crossing LLC ("Sapphire") filed this lawsuit on December 28, 2018 (D.I. 1 ("Complaint")) accusing Defendant WEX Health, Inc. ("WEX Health") of direct and indirect infringement of claim 19 in U.S. Patent No. 6,891,633 (the "'633 patent"). On February 27, 2019, WEX Health filed a Motion to Dismiss ("Motion") under Federal Rules of Civil Procedure Rule 12(b)(6) and 35 U.S.C. § 101 ("Section 101"). (D.I. 10, 11), and answered the Complaint. (D.I. 12).

## II. SUMMARY OF THE ARGUMENT

When evaluating WEX Health's Motion, this Court should consider these key points:

- Claim 19 describes a specific improvement (expounded in the specification) to scanning device interfacing and functionality by embedding a customized menu into the scanned image itself;

- The claims capture the inventive feature of embedding a customized "image transfer menu" from a computer into scanned image data from the scanning device; and

- *Berkheimer* prohibits dismissal under Section 101 here, given the factual dispute over the unconventionality of allowing another user to securely verify the integrity of an owner's data content.

WEX Health's Motion should be denied.

## III. LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss can only succeed when a complaint fails to state a plausible claim for relief, even where all well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). Such a motion may dispose of claims for patent infringement if the patent is invalid under

Section 101. *See, e.g., Umbanet, Inc. v. Epsilon Data Mgmt., LLC*, Case No. 2:16-CV-682-JRG at *4 (E.D. Tex. Apr. 18, 2017).

**IV.     STATEMENT OF FACTS**

**A.     Background.**

The '633 patent is titled "Image Transfer System" and describes "an image transfer device for reading and transferring an image from a first medium, and a computer." '633 patent, Abstract. Independent claim 19 is shown below.

| Claim 19 |
|---|
| "A method for transferring information from a first medium, the method comprising the steps of:" |
| (1) "providing an image transfer device having a scanner for reading an image on the first medium;" ("element 19.1") |
| (2) "reading the image on the first medium with the scanner;" ("element 19.2.") |
| (3) "automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device;" ("element 19.3") |
| (4) "with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner;" ("element 19.4") and |
| (5) "transferring the merged image by the transfer device to a second medium." ("element 19.5") |

**B.     The '633 patent claims specific techniques to solve problems in prior art image transfer systems.**

Claim 19 describes a particular technique with limiting detail: improving scanning device interfacing technology by embedding a customized "image transfer menu" from a computer into scanned image data from the scanning device. *See* '633 patent, claim 19.

The specification details the limited functionality of prior art image transfer systems. *See id.*, 1:15-20 ("[C]opying machine print manager system[s] . . . comprise[d] a terminal connected to a copying machine. Generally, copying machines in the prior art "are capable of performing only a given set of functions regardless of whether the copying machine is connected to a computer or not.").

Another problem plaguing prior art image transfer devices—solved by the '633 patent—was expanding speed and functionality of the device without dramatically increasing costs and stripping out much-needed processing and memory power to make the device affordable:

| '633 patent specification |
|---|
| "One of the significant cost factors in the manufacture of multi-function devices has been the cost of memory. **In order to provide the multi-function devices of the prior art with the ability to perform extended functions, such as collating, pagination, or addition of logos or messages, the size of the internal memory was increased with a resultant significant increase in the cost of the devices.** To reduce the cost of the devices in the prior art, the internal memory size was cut which limited the capabilities of the low cost devices to performing only basic functions such as mere copying or faxing without any enhancement. **In other words, in the prior art low cost meant small memory, and hence, only basic functions**." ('633 patent, 15:20-32 (emphasis added)). |

The claimed invention solves this problem by transparently, to the user, offloading the demanding processing and memory requirements of image transfer devices onto a removably connected computer. Overcoming this technical problem enabled enhanced functionality of the device while keeping the image transfer device affordable for consumers:

| '633 patent specification |
|---|
| "One of the significant advantages of the present invention is that **it solves the cost versus features conundrum by borrowing the processing power and memory capacity of a PC 14 to extend and enhance the functions of the multi function device 12**. Thus, the present invention eliminates the need for larger memory in the devices 12, thereby allowing the cost of the devices 12 to remain small in comparison to multi-function devices of the prior art which a capable of performing Similar extended or enhanced functions." ('633 patent, 15:32-41 (emphasis added)). |

Capitalizing on the enhanced and cost-effective gains in memory and processing power, the claimed invention "addresses the Software and UI enablers that allow a document to be scanned at the multifunction device." *Id.*, 1:25-30. It does so by claiming

the following technique: embedding a customized menu into the scanned image itself,

thereby improving scanner device interfacing and functionality for users. *See, e.g., id.*,

claim 19.

The specification explains how this efficient offloading of memory and

processing from the device gives a significant improvement to scanning device

interfacing and functionality:

| '633 patent specification |
| --- |
| "This invention provides the advantage of the device having internal minimal memory and menu displays to reduce the cost of the device, but **uses or borrows the software and memory of the PC** (without the user really knowing it, but he could) **and add new user selectable/accessible/viewable menu functions to the control panel display 50 of the device 12**." ('633 patent, 14:42-48 (emphasis added)). |

C. **The specification demonstrates how inventive features are implemented, including how the customized menu is embedded into the scanned image itself (*merging element*).**

The specification shows how to implement core facets of the claimed invention.

Figure 9[1] below provides a step-by-step flow chart example for how to implement claim

19. '633 patent, Fig. 9.

---

[1] Figure 9 uses a sheet medium as the "first medium" and a printed medium as the "second medium." *See* '633 patent, Fig. 9. It shows an exemplary implementation of claim 19, describing how the claimed image transfer method occurs; it does not limit the first and second medium to the examples provided.

| Figure 9 |
|---|



FIG. 9

The process steps of Figure 9 are expounded in the specification, providing a clear

roadmap for implementing claim 19. For example, procuring and uploading the "image

transfer menu" for the device (element 19.3):

| How to procure and upload the "image transfer menu" for the device |
|---|
| "[T]he PC 14 uploads a bitmap, such as a logo, an extra menu selection display feature for the bitmap, and coordinates for printing the bitmap on the paper. The upload would stay with the device 12 even if the PC 14 is disconnected from the device. This provides the advantage of faster printing of the indicia because the device 12 does not have to go back to the PC 14 for the indicia each time it is to be printed." ('633 patent, 14:48-55). |

Once the image transfer menu is uploaded to the transfer device from the computer, the specification shows how to merge that "electronic data" with the scanned image (element 19.4):

| How to merge the "electronic data" with the scanned image |
|---|
| "In the case where the user chooses from the enhanced menu on display 50 to add a fixed message to printed copies, the computer processor 32C automatically merges the bitmap for the fixed message from the computer memory 3.4C with the image data downloaded from the reader 18 (see FIG. 1). The computer processor 32C automatically accesses the bitmap from the memory 34C and merges the bitmap with the image data without user interaction. The manipulated data is then automatically sent to the print head 28 without user interaction for printing the image and the fixed message on sheet medium 102." ('633 patent, 13:56-67). |

**D.    The PTAB confirmed the validity of claims 19 and 20, determining that no prior art disclosed the *merging element*.**

The Patent Trial and Appeal Board ("PTAB") found in its Institution Decision that the "Petitioner has not demonstrated a reasonable likelihood of prevailing" under any ground asserted. *Unified Patents Inc. v. Ruby Sands LLC*, IPR2016-00723, Paper No. 7 at 49, 53 (P.T.A.B. Aug. 29, 2016) ("IPR Final Written Decision"), attached hereto as Exhibit A. The Petitioner supplied multiple references, attempting to demonstrate anticipation of claims 19 and 20. *See id.* at 47-53 (determining that the Motoyama and Shiimori references fail to anticipate claims 19 and 20).

Among other deficiencies, the PTAB concluded that none of the submitted references disclosed claim 19(4): "with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner." *See id.* at 48, 52.

**V.    SAPPHIRE'S CLAIMS PASS BOTH PRONGS OF *ALICE*, MAKING THEM PATENT ELIGIBLE UNDER SECTION 101**

**A.    Legal standard.**

Sapphire's claims are patent eligible, because they satisfy the *Alice* test for patent eligibility under Section 101. Patent-eligible subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101 (1952). The judicially recognized exceptions from this provision are for "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court has "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355.

First, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." ("*Alice* Step One"). *Id.* Otherwise, "the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014).

Second, only if the answer to the first step is "yes," then the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" ("*Alice* Step Two"). *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1297 (2012)). This step asks whether the claims add an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal citations omitted).

WEX Health also bears the burden of proving the invalidity of Sapphire's claims with clear and convincing evidence, which it cannot do in this case. *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2242 (2011).

**B.** **_Alice_ Step One: Sapphire's claims are patent-eligible subject matter.**

**1. WEX Health's reading contorts the elements of claim 19, calling them abstract only by describing them at a high level of abstraction.**

WEX Health strips the claims of all limiting detail and inventive concepts by reducing them to nothing more than "deploying a scanner for reading," "capturing," "uploading," "merging," and "transferring data." *See, e.g.*, Motion, 9.

Comparing WEX Health's abstracted summaries of the elements with those actual elements dispels the confusion:

| Table 1: Claim 19 is not abstract | |
|---|---|
| WEX Health's summary | Claim 19 |
| [omitted] | "A method for transferring information from a first medium, the method comprising the steps of:" |
| deploying a scanner for reading data | (1) "providing an image transfer device having a scanner for reading an image on the first medium;" |
| capturing data | (2) "reading the image on the first medium with the scanner;" |
| uploading data | (3) "automatically uploading electronic data **including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device**;" (emphasis added) |
| merging data | (4) **with a processor of the image transfer device**, automatically merging **the electronic data with the image read by the scanner**; and (emphasis added) |
| transferring data (Motion, 9) | (5) "transferring **the merged image by the transfer device to a second medium**." (emphasis added). |

WEX Health's summary of claim 19 strips out numerous limitations, including:

- The uploaded electronic data "includ[es] at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device";

- The particular data that is merged: "the electronic data" and "the image read by the scanner";

- The data is merged automatically "with a processor of the image transfer device";

- The particular transferred data is "the merged image"; and

- The location the data is transferred to: "a second medium."

WEX Health's reading of claim 19 therefore dilutes and departs from the actual claim language, an approach to Section 101 analysis prohibited by the Federal Circuit. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule."); *see also Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious").

*Alice* Step One must be meaningful: this step often ends the inquiry. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *see also Enfish*, 822 F.3d at 1335; *Alice*, 134 S. Ct. at 2354 (noting that "we tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law"). Singling out individual steps to find a patent-ineligible concept does not demonstrate that the claims are abstract. *Enfish*, 822 F.3d at 1335.

Instead, a court must consider claims in light of the specification and find an abstract idea only when "their character *as a whole* is directed to excluded subject matter." *See id.* (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)) (emphasis added). When understood this way, claim 19 is not abstract.

> **2.** **Claim 19 describes a specific improvement to scanning device interfacing and functionality by embedding a customized menu into the scanned image itself.**

Claim 19 describes a particular technique with limiting detail: improving scanning device interfacing technology by embedding a customized "image transfer menu" from a computer into scanned image data from the scanning device. *See* Section IV.B, Section IV.C. The specification shows how to implement those claimed techniques and improvements to scanning device interfacing technology. *Id.*

Utilizing another claimed technique, claim 19 solves another problem plaguing prior art image transfer devices: expanding speed and functionality of the device without dramatically increasing costs and without removing much-needed processing and memory power to make the device affordable. *See* Section IV.B. Claim 19 solves this problem by transparently, to the user, offloading the increasingly demanding processing and memory requirements of image transfer devices onto a removably connected computer. *See id.*

Since claim 19 captures specific inventive techniques with limiting detail, it does not resemble the abstract claims of *RecogniCorp*. *RecogniCorp*'s claims described nothing more than a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then

reproduces the image based on the codes." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017).

WEX Health perceives a similarity with *RecogniCorp*'s claims only by again stripping claim 19 of all limiting detail and inventive features: claim 19 does nothing more than "capture, upload, merge, and transfer images and associated data." Motion, 9. However, claim 19 has key limitations that go well beyond the standard data manipulation (encoding and decoding) of *RecogniCorp*'s claims; it improves scanning device interfacing technology by embedding a customized "image transfer menu" from a computer into the scanned image data from the scanning device. *See* Section IV.B. WEX Health ignores these key limitations, *see* Table 1, p. 8, and its comparison to *RecogniCorp* fails.

Claim 19 also does not simply "limit[] the claims to [a] particular technological environment" as found in *Electric Power*. 830 F.3d at 1354. As shown above, WEX Health guts the inventive features from claim 19 by saying: "[it] can be virtually any device capable of taking a photograph." Motion, 14. Even with that assertion, WEX Health fails to show that claim 19 limits an abstract concept to a particular technological environment, because *Electric Power*'s claims were limited to an electrical grid. 830 F.3d at 1354.

Since claim 19 describes a specific improvement to scanning device interfacing technology, it is non-abstract and patent eligible at *Alice* Step One.

C.      *Alice* **Step Two: Sapphire's claims recite an inventive concept.**

1.      **The claims capture the inventive feature of embedding a customized "image transfer menu" from a computer into scanned image data from the scanning device.**

Even if this Court finds that Sapphire's claims are directed to an abstract idea, the claims would still fall within the realm of an inventive concept post-*Alice*.

WEX Health rehashes its "distillation" of claim 19's elements in its *Alice* Step Two analysis as nothing more than "requir[ing] only a 'computer processor and memory' and an image transfer device such as a copier or fax machine." Motion, 14. Again, WEX Health hollows the elements of their inventive meaning, with a similar instance shown in Table 1 above. *See* Table 1, p. 8. The Federal Circuit prohibits such a reading of the claim language designed to invalidate otherwise patent-eligible subject matter. *See Enfish*, 822 F.3d at 1337. WEX Health's misreading of claim 19 permeates its analysis and disqualifies its comparison with patent-ineligible claims from a series of cases.

The patent claims at least two core inventive feature:

- embedding a customized "image transfer menu" from a computer into scanned image data from the scanning device (*see* Section IV.B, Section IV.C); and

- transparently (to the user) offloading the increasingly demanding processing and memory requirements of image transfer devices onto a removably connected computer (*see id.*).

These inventive concepts are both claimed and described in the specification. *See* Section IV.C.

This improvement to scanning device interfacing technology bears no resemblance with the conventional activity claimed in *Content Extraction*: "us[ing] . . . existing scanning and processing technology to recognize and store data from specific data fields such as amounts, addresses, and dates." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The claims here do not "recognize and store data" related to generic data fields; they are directed to

specific improvements in scanner interfacing and functionality. *See* Section IV.B, Section IV.C.

Nor does the specification provide only "abstract functional descriptions devoid of technical explanation as to how to implement the invention." *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016). The claimed inventive features described above are implemented with particularity in the specification.

For example, Figure 9 provides a step-by-step flow chart example for how to implement claim 19. '633 patent, Fig. 9; *see also* Section IV.C. The process steps of Figure 9 are explained in the specification and provide a clear roadmap for how to implement claim 19, including how to procure and upload the "image transfer menu" for the device (element 19.3). *See id.*, 1:48-55; *see also* Section IV.C. Once the image transfer menu is uploaded to the transfer device from the computer, the specification also shows how to merge that "electronic data" with the scanned image (element 19.4). *See* '633 patent, 13:56-67; *see also* Section IV.C.

> **2.** ***Berkheimer* prohibits dismissal under Section 101 here, given the factual dispute over the unconventionality of embedding a customized "image transfer menu" from a computer into scanned image data from the scanning device.**

Claim 19 describes inventive features that require a *factual* determination about its unconventionality: "inventive feature[s] . . . to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Summary judgment—let alone Rule 12(b)(6) dismissal—is "improper" because "whether the claimed invention is well-understood, routine, and

conventional is an underlying fact question for which [the defendant] offered no evidence." *Id.* at 1370.

Claim 19 describes at least two inventive features: (1) embedding a customized "image transfer menu" from a computer into scanned image data from the scanning device; and (2) transparently (to the user) offloading the increasingly demanding processing and memory requirements of image transfer devices onto a removably connected computer. *See* Section IV.B, Section IV.C.

On many occasions, WEX Health provides an opinion about the conventionality of these specifically claimed techniques. For example, without support (since extrinsic evidence is not permitted at this stage), WEX Health asserts: "[t]here is simply nothing 'inventive' about using a known process (*i.e.*, scanning images) and implementing it based on computer resources." Motion, 14. WEX Health weighs in, again without support, even more about conventionality: "[c]laim 19 does not require a new or unconventional machine or process for capturing, uploading, or transferring images—it requires only that well-known devices be connected to achieve an end-result of image transfer." Motion, 10. Once again, there are no citations.

Further, the PTAB determined that prior art failed to even disclose the inventive limitations of claims 19 and 20, including the merging element. *See* IPR Final Written Decision; *see also* Section IV.D. To demonstrate conventionality with *clear and convincing evidence*, WEX Health must go beyond showing that the prior art merely discloses all elements of the claims:

| Mere disclosure of a concept in the prior art does not render it conventional |
|---|
| "Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination. **Whether a particular technology is well-understood, routine, and conventional goes** |

> **beyond what was simply known in the prior art**. The mere fact that
> something is disclosed in a piece of prior art, for example, does not mean it was
> well-understood, routine, and conventional." (*Berkheimer*, 881 F.3d at 1368;
> (emphasis added)).

This dilemma demonstrates the peril of rendering a final decision on conventionality at the pleadings stage. Dismissal in the face of this genuine factual dispute over unconventional inventive features is therefore improper. *Berkheimer*, 881 F.3d at 1370.

## VI. MANY TERMS IN THE ASSERTED CLAIMS REQUIRE CLAIM CONSTRUCTION TO RESOLVE THE § 101 ISSUES: WEX HEALTH'S DEMAND FOR DISMISSAL NOW IS PREMATURE.

Given the parties' dispute over the unconventionality and meaning of claim terms such as "image transfer device," "image transfer menu," and "automatically merging," dismissal now is inappropriate.

Claim construction is therefore needed to resolve the issue of conventionality, at least for the terms "image transfer device," "image transfer menu," and "automatically merging." Without it, the ultimate issue of subject matter eligibility under Section 101 cannot be properly determined.

## VII. CONCLUSION

Sapphire requests that this Court deny WEX Health's Motion to Dismiss.

Dated: April 11, 2019

/s/ Timothy Devlin
Timothy Devlin (No. 4241)
DEVLIN LAW FIRM LLC
1306 North Broom Street, Suite 1
Wilmington, DE 19806
Telephone: (302) 449-9010
Email: tdevlin@devlinlawfirm.com

*Of Counsel:*

Isaac Rabicoff
Kenneth Matuszewski
RABICOFF LAW LLC
73 W Monroe St
Chicago, IL 60603
773-669-4590
isaac@rabilaw.com
kenneth@rabilaw.com

*Attorneys for Plaintiff Sapphire Crossing LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that all counsel of record who are deemed

to have consented to electronic service are being served with a copy of this document via

electronic filing on April 11, 2019.

*/s/ Timothy Devlin*
Timothy Devlin