Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Sapphire Crossing LLC**, | Case No. 1:18-cv-01717-MN-CJB (Lead) |
| Plaintiff, | |
| v. | Patent Case |
| **Quotient Technology Inc.** | Jury Trial Demanded |
| Defendant. | |

### DECLARATION OF MANSOOR ANJARWALA

I, MANSOOR ANJARWALA, DECLARE AS FOLLOWS:

### INTRODUCTION AND ENGAGEMENT

1.      I have been retained on behalf of Sapphire Crossing LLC ("Sapphire") to offer technical opinions relating to U.S. Patent No. 6,891,633 (the "Patent-in-Suit" or "'633 patent").

2.      I have no financial interest in either party or in the outcome of this proceeding. I am being compensated for my work as an expert on an hourly basis at my standard consulting rate. My compensation is not dependent on the outcome of these proceedings or the content of my opinions.

### PERSON OF ORDINARY SKILL IN THE ART

3.      It is my opinion that a person of ordinary skill in the art ("Person of Ordinary Skill in the Art") in the field of the Patent-in-Suit would have had a working knowledge of basic computer technology, mobile communication devices, digital imaging hardware and software applications, and Internet communications. The person would have gained this knowledge through, either (i) an undergraduate Bachelor of Science degree in Computer Science or Electrical Engineering (or a comparable field) and at least three years of work experience in

relevant fields, or (ii) a Master's degree in Computer Science or Electrical Engineering and at least one year of work experience in related fields. I also base this on my own personal experience, including my knowledge of colleagues and others at the time of invention.

MANSOOR ANJARWALA'S EXPERTISE IN THE FIELD

4.      My CV, attached hereto as Exhibit A, demonstrates that I am a Person of Ordinary Skill in the Art in the field of the Patent-in-Suit. *See generally*, Exhibit A.

5.      In particular, I have a Master of Computer Science in Information Systems, granted by DePaul University in 2002.

6.      I also have twenty years of relevant work experience in the field. This includes over a decade of senior management experience over software engineers in the mobile and web technology space. *See* Exhibit A.

INFORMATION CONSIDERED

7.      I have reviewed the Patent-in-Suit, as well as the other materials referenced below in Appendix A. Counsel has informed me that I should consider these materials through the lens of one of skilled in the art in the field of the Patent-in-Suit at the time of the earliest purported priority date of the Patent-in-Suit, and I have done so during my review of these materials. I have been asked to assume a priority date of July 30, 1999, based on the filing date of the application leading to the issuance of the Patent-in-Suit (the "Critical Date").

8.      My analyses are based on my years of education and work experience, as well as my investigation and study of relevant materials. In my analyses, I have considered the materials that I identify in this Declaration and those listed in Appendix A.

9.      My review and assessment of the materials provided in this proceeding is ongoing, and I will continue to consider any new material as it is provided. I reserve the right to

2

review, supplement, and amend my analyses based on new information and on my continuing review of the materials already provided.

### CLAIM 19 OF THE PATENT-IN-SUIT

10. The asserted claim 19 recites the following:

| Claim 19 |
|---|
| 19. A method for transferring information from a first medium, the method comprising the steps of:<br><br>providing an image transfer device having a scanner for reading an image on the first medium;<br><br>reading the image on the first medium with the scanner;<br><br>automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device;<br><br>with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner; and<br><br>transferring the merged image by the transfer device to a second medium. |

### THE MERGING STEP CAPTURES AN UNCONVENTIONAL INVENTIVE CONCEPT, WHOSE IMPLEMENTATION IS DETAILED IN THE SPECIFICATION

11. Claims 19 and 20 (dependent upon 19) recite "with a processor of the image transfer device, **automatically merging the electronic data with the image read by the scanner**," where "**the** electronic data" must include "**at least a portion of an image transfer menu**" (the "Merging Step") *See* '633 patent, claims 19 and 20.

12. The Merging Step captures an unconventional inventive concept—a scanning device functionality that is unconventional over the prior art, whose implementation is provided in the specification.

13. The PTAB has construed "image transfer menu" in the following way:

| PTAB construction of "image transfer menu |
| --- |
| "[W]e determine the broadest reasonable interpretation of "**image transfer menu**," for purposes of this decision, to encompass a list, displayed on a screen of a first computing device, of **available functions selectable by a user, including a function that necessitates either one or both of transmitting image data and receiving image data**." (D.I. 13[1], Ex. A, pp. 12-14; emphasis added.; *see also* Court Report, 15 n.10 (the Court adopting this PTAB construction for purposes of resolving a Motion to Dismiss). |

14.     The Merging Step therefore involves the merging of a scanned image with a *portion* of an image transfer menu, i.e. merging the scanned image with a menu function that was performed *upon* that scanned image. *See* D.I. 13, Ex. A, pp. 12-14 (this menu must include "a function that necessitates either one or both of transmitting image data and receiving image data").

15.     And the specification describes *how* the processor of the image transfer device merges the scanned image with a portion of the image transfer menu:

| The specification shows how the processor of the image transfer devices merges the scanned image with a portion of the image transfer menu |
| --- |
| "The CPU 20 then, in block T4, merges the bitmap with the image data from the reader 18 of the device 12 such that the image printed by the print head 28 on the sheet medium 102, block T5 of FIG. 9, includes the message "Confidential Document" in the desired location. A similar method may be used to add the time and date stamp, a company name, a logo or a watermark to images being transferred from the reader 18 to the print head 28 of the image transfer device 12." '633 patent, 12:3-11; *see also id.*, Fig. 9; *see also* Court Recommendation, 17 (describing this citation as "one portion of the specification (in column where the concept of automatically merging a bitmap with downloaded image data (in a manner that might be akin to what is described in claim 19) is briefly addressed.") |

---

[1] Citations to the docket throughout are based on the case, *Sapphire Crossing LLC v. Quotient Technology Inc.*, Case No. 1:18-cv-01717 (D. Del.).

> "In this embodiment of the present invention, some data 40 **used to effect image transfer with device 12 according to the enhanced menu features** is stored in the memory 34A of the computer 14. By way of example, **such data may include bitmaps representing time and date stamps, fixed messages, logos or watermarks to the added to the images** as well as the 45 coordinates for printing the bitmaps on sheet medium 102 (see FIG. 1)." ('633 patent, 11:40-46; emphasis added.)

16.     This Court has also determined, at the pleadings stage, that in one possible embodiment of the invention, a bitmap could be a portion of an image transfer menu. *See* Court Report, 16 n.11 ("Nevertheless, for purposes of resolving the Motion, the Court will assume that a bitmap can be a portion of an image transfer menu.")

17.     The image transfer device can therefore merge a scanned image with a portion of the image transfer menu (which could be a bitmap, i.e. the part of the menu visible to the user), by "superimposing the menu/bitmap on top of the scanned image." *See* Court Recommendation, 16; *see also* '633 patent, 12:3-11.

18.     This understanding of the Merging Step is fully consistent with the infringement contentions alleged here: the data identifying a user's menu selection is similar or equivalent to the bitmap image file described in the specification because it similarly identifies the user's menu selection and identifies the function or operation that is completed on an image.. *See* First Amended Complaint, Exhibit 2.

### No Prior Art in the Specification or the Materials Considered renders the Merging Step Conventional

19.     Upon extensively reviewing the specification of the Patent-in-Suit, along with the Materials Considered in Appendix A, I have determined that none of this prior art renders the Merging Step conventional.

20.     The specification's only references to prior art image transfer systems perform nothing like the Merging Step:

5

| Prior art image transfer systems do not render the Merging Step conventional |
| --- |
| "There are examples in the prior art of image transfer systems comprising an image transfer device coupled to one or more computers. One such example is U.S. Pat. No. 5,798,738 which provides a copying machine print manager system which comprises a terminal connected to a copying machine. Generally, **copying machines in the prior are capable of performing only a given set of functions regardless of whether the copying machine is connected to a computer or not**." '633 patent, 1:11-20; emphasis added.<br><br>"One of the significant cost factors in the manufacture of multi-function devices has been the cost of memory. In order to provide the **multi-function devices of the prior art with the ability to perform extended functions, such as collating, pagination, or addition of logos or messages**, the size of the internal memory was increased with a resultant significant increase in the cost of the devices." '633 patent, 15:20-26; emphasis added. |

21.     A copy machine "compris[ing] a terminal connected to a copy machine", "capable of performing a given set of functions **regardless of whether the copying machine is connected to a computer or not**" cannot render the Merging Step convention. *Id.*, 1:11-20. Nor could those prior art "extended functions, such as collating, pagination, or addition of logos or messages." *Id.*, 15:20-26.

22.     First, the claimed image transfer device has a specific function (the Merging Step) which specifically *requires* a connected computer for it to function as intended (unlike the prior art, where the function works regardless of whether a computer is connected). *See* '633 patent, claim 19 ("automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device **to the transfer device from a computer connected to the transfer device**"; emphasis added.)

23.     Second, no prior art disclosure here suggests, let alone renders conventional, the specific inventive feature claimed here: the merging of a scanned image with the menu function (i.e. "portion of the image transfer menu") that was performed upon that scanned image. In particular, the prior art functions of "collating, pagination, or addition of logos or messages" do

not remotely resemble and therefore cannot render this inventive step conventional. To be clear, the prior art merely discloses the "addition of logos or messages" to physical print outs from a multifunction device and does not disclose the inventive aspect of the Merging Step, which superimposes the menu function performed upon the scanned image on top of the scanned image itself.

24.     Rather, this inventive step is an improvement *over* merely adding logos or messages to physical print-outs, where the outputted merged image, as claimed here, effectively records or memorializes the menu function that was applied to that scanned image by superimposing that menu function *upon* the scanned image. Among other things, it avoids the need for separate and unreliable record keeping of the functions applied to scanned images (where the number of scanned images or menu functions may be voluminous and therefore hard to track), because that function has been superimposed upon that scanned image through the Merging Step.

25.     Accordingly, no prior art discussed in the Specification, or elsewhere in the Materials Considered of Appendix A, renders the Merging Step conventional. The Merging Step is therefore an unconventional inventive step, whose implementation is detailed in the specification.

CONCLUSION

26.     I declare that all statements made herein of my knowledge are true, and that all statements made on information and belief are believed to be true, and that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

APPENDIX A

MATERIALS CONSIDERED

| Docket Number[2] | Description |
|---|---|
| D.I. 1-1 | U.S. Patent No. 6,891,633 |
| D.I. 47 | This Court's Report and Recommendation regarding Motion to Dismiss |
| D.I. 13 | PTAB Ruling denying institution against claims 19 and 20 of the '633 patent |

---

[2] Citations to the docket throughout are based on the case, *Sapphire Crossing LLC v. Quotient Technology Inc.*, Case No. 1:18-cv-01717 (D. Del.).

Dated: September 17, 2019                    By: *Mansoor Anjarwala*
                                             Mansoor Anjarwala