# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAPPHIRE CROSSING LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 18-1717-MN-CJB (Lead) |
| QUOTIENT TECHNOLOGY INC., | ) ) ) |
| Defendant. | ) ) ) |

## REPORT AND RECOMMENDATION

Presently before the Court in these consolidated patent infringement cases are renewed motions to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), by Defendants Quotient Technology Inc., Intuit Inc., HealthEquity, Inc., WEX Health, Inc. and Netsmart Technologies, Inc. (collectively "Defendants")[1] seeking to dismiss Plaintiff Sapphire Crossing LLC's ("Plaintiff") claims of patent infringement for failure to state a claim upon which relief can be granted (the "Motions"). (D.I. 56) According to Defendants, asserted U.S. Patent No. 6,891,633 ("the '633 patent" or "the asserted patent") is directed to ineligible subject matter under 35 U.S.C. § 101 ("Section 101"). For the reasons set out below, the Court recommends that the Motion be DENIED.

## I.   BACKGROUND AND LEGAL STANDARDS

The Court hereby incorporates by reference its summary of the procedural history of the case, its summary of the technology at issue and the asserted patent, and its summary of the relevant legal standards, all of which were set out in the Court's August 14, 2019 Report and Recommendation ("August 14 R&R") in this case. (D.I. 47 at 1-8); *see Sapphire Crossing LLC*

---

[1]   Defendants Visa Inc. and Xero, Inc. were terminated from the case on October 30, 2019 and November 27, 2019, respectively. (D.I. 67; D.I. 79)

*v. Quotient Tech. Inc.*, Civil Action No. 18-1717-MN-CJB (Lead), 2019 WL 3817571 (D. Del. Aug. 14, 2019), *report and recommendation adopted*, 2019 WL 4076219 (D. Del. Aug. 29, 2019). The Court writes here primarily for the parties, and assumes familiarity with the August 14 R&R.

Subsequent to the District Court's adoption of the August 14 R&R, which granted certain of Defendants' first motion to dismiss filed on Section 101 grounds (the "first motion to dismiss"), Plaintiff then filed Amended Complaints against each of the remaining Defendants. (D.I. 49; D.I. 50; D.I. 51; D.I. 53; Civil Action No. 19-1401-MN-CJB, D.I. 14 (collectively, the "Amended Complaint")[2]) Defendants Quotient Technology Inc., Intuit Inc., HealthEquity, Inc. and WEX Health, Inc. next filed their renewed motion to dismiss on October 3, 2019, (D.I. 56), while Defendant Netsmart Technologies, Inc. filed its renewed motion to dismiss on October 7, 2019, (Civil Action No. 19-1401-MN-CJB, D.I. 18). Briefing on the Motions was completed on November 22, 2019. (D.I. 77)

## II. DISCUSSION

In the August 14 R&R, the Court determined at step one of the *Alice* inquiry that representative asserted claim 19 was directed to the abstract idea of "capturing, uploading and transferring data." (D.I. 47 at 10-13) At step two, the Court explained why the materials of

---

[2] Although each of the Amended Complaints contains individualized infringement allegations relating to Defendants' accused products, the allegations regarding the '633 patent (allegations related to inventiveness, unconventionality, and benefits over the prior art, and the expert declarations attesting thereto) are identical. (*See* D.I. 49; D.I. 50; D.I. 51; D.I. 53; Civil Action No. 19-1401-MN-CJB, D.I. 14) Therefore, the Court will refer to the Amended Complaints collectively herein, and will cite solely to the Amended Complaint filed against Defendant Quotient Technology Inc. unless otherwise noted.

record, including the operative Complaints, simply did not include sufficient material to allow the conclusion that claim 19 contained an inventive concept. (*Id*. at 13-19)

Plaintiff has now added allegations in the Amended Complaint and has attached an expert declaration from Mansoor Anjarwala; in these documents, Plaintiff alleges that the "merging" step of claim 19 is unconventional and an inventive concept. (*See* D.I. 49; *id.*, ex. 3) The key question here, then, is whether these allegations are sufficient to defeat the Motions at *Alice*'s step two.[3] The Court concludes that, at the Rule 12 stage, they are.

In exploring this step two question, the Court must be mindful that although a determination of patent eligibility under Section 101 is ultimately an issue of law, the determination may involve "disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). One such factual issue is "[w]hether [a claim element or claimed combination] is well-understood, routine, and conventional to a skilled artisan at the time of the patent[.]" *Id.* at 1369. Alleged improvements to the prior art described in a patent's specification and "captured in the claims" can "create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities"—thus precluding either summary judgment, *id.*, or dismissal at the Rule 12 stage, *see BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Content that creates this type of fact dispute might also be found in a plaintiff's complaint, so long as the complaint's allegations in this regard are not "wholly divorced from the claims or the specification."

---

[3] The Court focuses on *Alice*'s step two here because: (1) Plaintiff's additions to the Amended Complaints are largely focused on explaining why the claims at issue include an "inventive concept" pursuant to step two-related Section 101 case law, (*see* D.I. 49; *id.*, ex. 3); and (2) in its briefing, Plaintiff's arguments about why the claims are not directed to an abstract idea are almost identical to Plaintiff's step one arguments that the Court rejected in the August 14 R&R, (*compare* D.I. 13 at 8-11, *with* D.I. 69 at 8-12; *see also* D.I. 77 at 2 n.1).

3

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). Put differently, "[a]s long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons *why* this claimed structure is unconventional." *Id.* (emphasis added).

Here, the Amended Complaint—which incorporates Mr. Anjarwala's declaration (the "Anjarwala Declaration") by reference, (D.I. 49 at ¶ 11)—contains "plausible and specific factual allegations that aspects of the claims are inventive[,]" sufficient to defeat Defendants' Motions. *Cellspin*, 927 F.3d at 1317. As noted above, Plaintiff's allegations of inventiveness center on the "merging" step of claim 19: "with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner[.]" ('633 patent, col. 18:16-18) "[T]he electronic data" of the merging step refers back to the previous step of "automatically uploading electronic data *including at least a portion of an image transfer menu* to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device[.]" (*Id.*, col. 18:12-15 (emphasis added)) According to Mr. Anjarwala, the "specific inventive feature claimed here" is "the merging of a scanned image with the menu function (i.e., 'portion of the image transfer menu') that was performed upon that scanned image." (D.I. 49, ex. 3 ("Anjarwala Declaration") at ¶ 23)[5] He asserts that this required step is not conventional, based on his review of the prior art. (*Id.* at ¶¶ 19-25) Mr. Anjarwala further

---

　　　　５　　　　In the August 14 R&R, at Plaintiff's suggestion, the Court adopted Plaintiff's suggested construction of "image transfer menu" (the same construction that had been adopted by the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") during *inter partes* review of the asserted patent) for the purpose of deciding Defendants' Section 101 motions to dismiss. (D.I. 47 at 15 n.10) Mr Anjarwala's description of a "portion of the image transfer menu" as a menu function performed upon the scanned image does not appear to be inconsistent with this adopted construction.

explains that "the prior art merely discloses the 'addition of logos or messages' to physical print outs from a multifunction device" and that the "merging step" in claim 19—a step "which superimposes the menu function performed upon the scanned image on top of the scanned image itself"—"is an improvement *over* merely adding logos or messages to physical print-outs" because "the outputted merged image, as claimed here, effectively records or memorializes the menu function that was applied to that scanned image by superimposing that menu function *upon* the scanned image." (*Id.* at ¶¶ 23-24 (emphasis in original))  Mr. Anjarwala describes the benefit of this assertedly unconventional step as "avoid[ing] the need for separate and unreliable record keeping of the functions applied to scanned images (where the number of scanned images or menu functions may be voluminous and therefore hard to track), because that function has been superimposed upon that scanned image through the Merging Step." (*Id.* at ¶ 24)

This all amounts to specific, fact-based allegations that:  (1) assert that a limitation contained in the claim (the "merging" limitation) is unconventional; (2) describe how that limitation works; and (3) explain why that limitation provides benefits over the prior art.  These allegations are not clearly contradicted by the specification of the asserted patent or by claim 19, and thus they cannot be rejected at the Rule 12 stage.

Defendants counter that Anjarwala Declaration can be disregarded for two primary reasons.  The Court disagrees, as explained below.

First, Defendants argue that the Anjarwala Declaration actually "demonstrates" or "establishes" that the merging step *is* conventional.  (D.I. 57 at 17; D.I. 77 at 8)  In Defendants' words, "[t]he Anjarwala Declaration establishes that the 'automatically merging' limitation[] is just the conventional step of 'merely adding logos or messages to physical print-outs.'" (D.I. 57

5

at 17 (citing Anjarwala Declaration at ¶ 23)) Upon closer inspection, Defendants' argument here appears to be a multi-step one, which goes as follows:

> (1) Defendants note that Mr. Anjarwala concedes that the merged portion of an image transfer menu "could be a bitmap, i.e., the part of the menu visible to the user[.]" (Anjarwala Declaration at ¶ 17; *see also* D.I. 57 at 17);
>
> (2) Then, Defendants assert, citing to the '633 patent, that a "logo" can also be a bitmap. (*See* '633 patent, col. 14:48 ("PC **14** uploads a bitmap, such as a logo . . . ."); *see also* D.I. 57 at 18);
>
> (3) From this, Defendants surmise that a "[']portion of the image transfer menu['] could be a logo[.]" (D.I. 57 at 18; *see also id.* at 17 n.7);
>
> (4) Defendants then argue that the addition of logos to a scanned image was conventional in the art. (D.I. 77 at 9 ("The addition of logos or messages was conventional regardless of whether they were added to a merged image or a physical print out.") (citing '633 patent, col. 15:20-26)); and thus
>
> (5) Defendants assert that claim 19's merging step (which, according to Defendants, covers merging a logo with a scanned image), thus cannot amount to an inventive concept.

In the Court's view, Defendants' argument hinges on their construction of the term "portion of an image transfer menu"—one that conflicts with Plaintiff's (plausible) contrary construction. Plaintiff argues that "the 'image transfer menu' *cannot* be merely a logo" based on the PTAB's construction of the term (which Plaintiff adopts, and the Court too has adopted for purposes of resolving these Motions); according to Plaintiff, an "image transfer menu" must "include 'a function that necessitates either one or both of transmitting image data and receiving image data.'" (D.I. 69 at 16-17 (emphasis in original) (quoting D.I. 13, ex. A at 12-14); *see also supra* n.5) And, relatedly, Plaintiff asserts that a "portion of an image transfer menu" must be the "same menu function . . . that was performed upon t[he] scanned image[.]" (*See* D.I. 69 at

13; *see also* Anjarwala Declaration at ¶ 23 (same)) If Plaintiff is correct, then it does not seem like a "logo" would fit that bill. And it is not as if Defendants' citations to the asserted patent, in support of their contrary argument (i.e., that a logo can be a "portion of an image transfer menu"), (D.I. 57 at 17-18), are particularly robust. Given the disputed construction of the term "portion of an image transfer menu," and given that Plaintiff's construction is not contradicted by anything in the current record, the Court adopts Plaintiff's construction for purposes of resolving the Motions. *See Content Extraction & Transmission LLC v. Wells Fargo Bank Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (reviewing an eligibility decision at the pleading stage and adopting a construction most favorable to the patentee (even one where there was some question as to the construction's merit), before going on to assess whether, even in light of that construction, the claims could survive the *Alice* analysis). Therefore, the Court rejects Defendants' argument that Mr. Anjarwala conceded conventionality, which is premised on the adoption of Defendants' contrary claim construction.

Second, Defendants argue that the allegations in the Anjarwala Declaration are simply "legal conclusions" that are "completely untethered" from the '633 patent, and thus need not be accepted as true. (D.I. 57 at 18-20; D.I. 77 at 9-10) But an expert's declaration asserting that certain features of a patent claim are "unconventional" in the prior art, combined with an explanation of why this is so and how the features provide certain benefits over the prior art, are factual assertions—not legal conclusions. *See Berkheimer*, 881 F.3d at 1368-69. Thus, they must be accepted as true at the pleading stage. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (noting that a complaint's allegations must be accepted as true, and read in the light most favorable to the plaintiff); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-28 (Fed. Cir. 2018). As to the claim that Mr. Anjarwala's

assertions are "untethered" from the patent, in essence, Defendants' argument here is that because the '633 patent is silent as to the inventiveness of claim 19's "merging" limitation, that means the limitation was not inventive. (*See* D.I. 57 at 16 ("The '633 Patent does not contain any discussion of unconventionality that would be relevant to the [Section] 101 analysis."); *id.* ("[n]either the claims nor the specification raises any factual disputes"); *id.* at 19 ("neither the claims nor the specification describes the allegedly inventive feature of superimposing a menu selection."); D.I. 77 at 7-8) To be sure, the patent *is* silent on this front, (D.I. 47 at 16-17), but now, that gap has been filled in by Mr. Anjarwala's declaration. *Cellspin*, 927 F.3d at 1317-18. And although the Court need not accept as true factual allegations by an expert that are contradicted by the asserted patent, *see Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017), here, the Court sees no immediately-apparent inconsistency between Mr. Anjarwala's assertions of inventiveness and the '633 patent itself.

On the present record, there is a fact issue regarding whether the merging step amounts to an inventive concept (with Plaintiff having plausibly alleged that it does). Thus, the Court recommends that the District Court deny the Motions without prejudice to Defendants' ability to raise a Section 101 challenge at the summary judgment stage. *See Pebble Tide LLC v. Arlo Techs., Inc.*, C.A. No. 19-769-LPS, 2020 WL 509183, at *3-4 (D. Del. Jan. 31, 2020) (denying a motion to dismiss filed on Section 101 grounds in light of "plaintiff's non-conclusory factual allegations in the complaint which are plausible and are not contradicted by anything in the specification" and that alleged that the claims were directed to a "new and useful configuration of components and describe an improvement in computer capabilities").

**III.    CONCLUSION**

For all of these reasons, the Court recommends that the District Court DENY Defendants' Motion without prejudice to Defendants' ability to raise the issue at the summary judgment stage.[6]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  April 1, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[6]    Defendants' request for oral argument, (D.I. 78), is DENIED.